**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

MARK BURNS,

                            Plaintiff,

    v.                                        No. 13-CV-486 (LEK/CFH)

BRIAN FISCHER, Commissioner of N.Y.S. Dept. of Corrections; TERESA KNAPP-DAVID, Director of Movement and Control, N.Y.S. DOCCS; DANIEL F. MARTUSCELLO, JR., Superintendent, Coxsackie Correctional Facility; CAPTAIN SHANLEY, Captain, Coxsackie Correctional Facility; SGT. NOEH, Sergeant, Coxsackie Correctional Facility; SCHWEBLER, Guidance Counselor, Coxsackie Correctional Facility; and McGLYNN, Guidance Counselor, Coxsackie Correctional Facility,

                            Defendants.[1]

---

**APPEARANCES:**

MARK BURNS
99-A-4073
Plaintiff Pro Se
Wyoming Correctional Facility
P.O. Box 501
Attica, NY 14011-0501

HON. ERIC T. SCHNEIDERMAN
Attorney General for the
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**OF COUNSEL:**

LAURA A. SPRAGUE, ESQ.
Assistant Attorney General

**CHRISTIAN F HUMMEL
U.S. MAGISTRATE JUDGE**

---

[1] By notice and acknowledgment of receipt of summons and complaint, defendant Noeh indicated that his name is spelled "Noeth." Dkt. No. 13. The Court considers this as mere error on Burns's part and the latter spelling is used throughout this report-recommendation.

## REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff Mark Burns ("Burns"), an inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, seven DOCCS employees, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. Compl. (Dkt. No. 1). Presently pending is defendants' motion to dismiss certain defendants pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 22. Burns does not oppose the motion.[3] Dkt. No. 30. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts are related herein in the light most favorable to Burns as the non-moving party. See subsection IIA infra. At all relevant times, Burns was an inmate at Coxsackie Correctional Facility.

While working in the commissary, Burns was struck in the head by a falling can. Burns Aff. (Dkt. No. 1-1) ¶¶ 16, 30.[4] Burns immediately reported the accident to an officer in the commissary. Id. ¶ 23. The officer had witnessed the accident and documented the injury

---

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3] In Burns's response to defendants' motion to dismiss, Burns limits his opposition of the motion to the dismissal of claims against defendants Shanley, Martuscello, and Noeth. Dkt. No. 30 ¶ 9. Defendants did not move to dismiss claims against these three defendants; therefore, the motion is essentially unopposed.

[4] Burns filed a Memorandum of Law (Dkt. No. 1-2) containing much of the same content available in his Affidavit.

2

as the result of a "work related" accident. Id. ¶¶ 23, 29–30.

On May 20, 2010, Burns met with defendants Shanley and Noeth. Burns Aff. ¶¶ 20–25. During the meeting, Shanley said Burns's wife called and told Shanley that Burns was cut by another inmate. Id. ¶ 21. Burns explained that he had not been attacked but he was injured in an accident. Id. ¶¶ 22, 30. Further, Burns explained that his wife was attempting to cause him trouble in reaction to recent marital discord. Id. ¶ 22. By all accounts there were no cuts visible on Burns's body to suggest he had been attacked. Id. ¶¶ 24, 32. Burns informed Shanley as to the accident that occurred the previous day. Id. ¶¶ 22–23.

Also during that meeting, Shanley threatened to transfer Burns to Involuntary Protective Custody ("IPC") unless Burns agreed to provide gang and drug information. Burns Aff. ¶¶ 20–25. In response to Burns's refusal to act as a "snitch," Shanley told Noeth to write up an IPC recommendation. Id. ¶ 26. The following day, Burns was served with an IPC order and transferred to a housing unit that is part of the Special Housing Unit ("SHU"). Id. ¶¶ 27–28. Burns asserts that the IPC recommendation was based on fabricated events. Id. ¶ 33.

Shanley, Noeth, and the commissary officer testified during a Tier III hearing addressing Burns's IPC status. Burns Aff. ¶¶ 29–33. The commissary officer supported Burns's account of the accident. Id. ¶ 30. Noeth testified that he believed Burns's account of the accident and Burns had no problems with other inmates. Id. ¶ 31. Noeth only filed the IPC recommendation because he was ordered to by Shanley. Id. Shanley acknowledged that there were no witnesses or documentation as to an attack on Burns but gave false statements to justify the IPC recommendation. Id. ¶¶ 32–33. It can be inferred that the hearing resulted in approval of Burns's transfer to IPC. Id. ¶¶ 28, 33–34.

Since May 21, 2010, Burns has been placed in IPC for twenty-three hours a day on

keeplock[5] status. Burns Aff. ¶¶ 27–28, 44–45. Burns is housed in cells neighboring general population inmates against IPC guidelines. Id. ¶ 39. Despite Burns's IPC status, Burns is in close proximity with dangerous and troublesome inmates, who frequently create an auditory nuisance through the night. Id. ¶¶ 40–41, 63–64. While in IPC, Burns is unable to avail himself of a number of programs and services which were previously accessible in general population and DOCCS has failed to provide services which should be available to IPC inmates pursuant to guidelines and directives. Id. ¶¶ 46–64.

Among these lack of services, defendants Guidance Counselors Schwebler and McGlynn failed to make required daily rounds. Burns Aff. ¶¶ 55–58. The librarian and religious supervisors failed to make required weekly rounds. Id. ¶¶ 49–52. Grievance Supervisors failed to make required daily rounds. Id. ¶¶ 57–58. Burns is denied the use of exercise facilities and participation in family reunion programs and facility festivals. Id. ¶¶ 53–54, 61–62. Additionally, Burns is only allotted three hours of programming and out of cell recreation time; inmates in general population are afforded up to thirteen hours. Id. ¶¶ 46–47.

While in IPC, Shanley and Martuscello repeatedly prompted Burns to provide them with information. Burns Aff. ¶¶ 34, 36, 42, 65. Upon refusing the requests, Shanley and Martuscello responded that Burns would only be released from IPC if Burns relented. Id. ¶¶ 34, 42, 65. Furthermore, Shanley and Martuscello threatened Burns with administrative segregation if Burns did not cease filing grievances about his IPC status. Id. ¶ 36.

---

[5] "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

4

## II. Discussion

Viewing the allegations in the light most favorable to the plaintiff, Burns contends that his First Amendment rights were violated when defendants Shanley, Martuscello, and Noeth retaliated against Burns for being uncooperative in providing gang and drug information. Burns next contends his Eighth Amendment rights were violated by the cruel and unusual conditions of confinement in relation to his IPC status. Burns further contends that his Fourteenth Amendment due process rights were violated by the reliance on fabricated events to justify his IPC status and confinement.

Defendants move to dismiss on the grounds that (1) in their official capacities, all defendants are entitled to Eleventh Amendment immunity and (2) Burns has failed to allege the personal involvement of defendants Fischer, Knapp-David, Schwebler and McGlynn.

### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 329, 335 (2d. Cir 2009)). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . .

5

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted).

Consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citations omitted). However, there are instances where the court may consider documents outside those previously referenced, including when the documents are only "partially quoted in [the] complaint . . .; integral to [the] complaint . . .; [or] relied upon . . . in drafting the complaint . . . ." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal quotation marks and citations omitted). Specifically, the following documents may be considered when construing a complaint's pleading sufficiency:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, . . . and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

Weiss v. Incorp. Village of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (citations omitted).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).

### B. Eleventh Amendment

Defendants move to dismiss all claims against them in their official capacity. Dkt. No. 22. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her]

own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Burns seeks monetary damages against defendants for acts occurring within the scope of their duties. Thus, the Eleventh Amendment bar applies and serves to prohibit Burns's claims for monetary damages against all defendants in their official capacity.

Accordingly, defendants' motion on this ground should be granted.

### C. Personal Involvement

Defendants contend that Burns has failed to allege the personal involvement of defendants Fischer, Knapp-David, Schwebler, and McGlynn.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d

8

Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986))

In this case, Burns does not allege that Commissioner Fischer or Director Knapp-David directly participated in the alleged constitutional violations. Rather, Burns's complaints against these defendants appear to be that they were in positions of power, thus always involved with anything occurring in conjunction with Burns's confinement. However, attempts to establish personal involvement based upon the supervisory roles these defendants occupied are inappropriate. Wright, 21 F.3d at 501 (holding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement).

Further, to the extent that Burns contends he notified Fischer and Knapp-David of the

9

alleged constitutional violations through grievances and associated appeals, such claims do not sufficiently state the personal involvement of either defendant. Merely writing letters and grievances to a defendant is insufficient to establish notice and personal involvement. Smart v. Goord, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) ("Commissioner . . . cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff] . . . ."). Similarly, receipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement. See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citing cases); Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."). Burns does not contend that Fischer or Knapp-David acted on his written complaints. Moreover, Burns does not allege that either Fischer or Knapp-David created a policy or custom under which unconstitutional practices occurred, were grossly negligent in supervising subordinates, or were deliberately indifferent to his rights by failing to act on information indicating unconstitutional acts had occurred. Thus, Burns has failed to establish the personal involvement of Fischer and Knapp-David.

As for defendants Schwebler and McGlynn, Burns has sufficiently alleged their personal involvement. Burns alleged that per DOCCS directive, counselors are required to make daily rounds in SHU, where Burns is held in IPC. Burns Aff. ¶¶ 55–58. However, Burns asserts that Schwebler and McGlynn directly participated in the alleged constitutional violations by failing to make the required daily rounds, contributing to Burns's confinement

10

conditions.  See Colon, 58 F.3d at 873.  Thus, Burns has sufficiently established the personal involvement of Schwebler and McGlynn.

Accordingly, defendants' motion on this ground should be granted as to defendants Fischer and Knapp-David and denied as to defendants Schwebler and McGlynn.

### III.  Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 22) be:

   A. **GRANTED** as to the (1) Eleventh Amendment bar to § 1983 claims against all individual defendants in their official capacities; (2) personal involvement defense for defendants Fischer and Knapp-David; AND

   B. **DENIED** as to the (1) personal involvement defense for defendants Schwebler and McGlynn.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  February 3, 2014
        Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge