**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MARK BURNS,

                          Plaintiff,

          v.                                              No. 13-CV-486
                                                              (LEK/CFH)

BRIAN FISCHER, Commissioner of Corrections
N.Y.S. DOCS; THERESA KNAPP-DAVID,
Director of Classification and Movement at
N.Y.S. DOCS; Captain SHANNELY,
Coxsackie Correctional Facility N.Y.S. DOCS;
Sergeant NOEL, Coxsackie Correctional
Facility N.Y.S. DOCS; Correction Counselor
SCHWEBLER, Coxsackie Correctional
Facility N.Y.S. DOCS; Correction Counselor
McGLYNN, Coxsackie Correctional Facility
N.Y.S. DOCS,

                          Defendants.

_____

**APPEARANCES:**                          **OF COUNSEL:**

MARK BURNS
Plaintiff Pro se
99-A-4073
Wyoming Correctional Facility
P.O. Box 501
Attica, New York 14011


HON. ERIC T. SCHNEIDERMAN          JOSHUA E. McMAHON, ESQ.
Attorney General for the                     Assistant Attorney General
  State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff <u>pro se</u> Mark Burns, an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, Daniel F. Martuscello, Jr., Superintendent of Coxsackie Correctional Facility ("Coxsackie"); Raymond Shanley, Captain at Coxsackie; James Noeth, Sergeant at Coxsackie; Bradley Schwebler, Guidance Counselor at Coxsackie; and Megan McGlynn, Guidance Counselor at Coxsackie violated his rights under the First, Eighth, and Fourteenth Amendments of the Constitution of the United States. Defendants moved to dismiss the claims against defendants Fischer, Knapp-David, Schewbler, and McGlynn for lack of personal involvement. Dkt. No. 22. Burns opposed the motion as against Fischer and Knapp-David, but did not oppose insofar as it moved to dismiss against Schewbler and McGlynn. Dkt. No. 30, at ¶ 8. By Report-Recommendation and Order dated February 3, 2014, the undersigned (1) granted the defendants' motion to dismiss as to (a) the Eleventh Amendment bar against individual defendants in their official capacities, and (b) the personal involvement defense for defendants Brian Fischer and Teresa Knapp-David; and (2) denied the motion to dismiss as to the personal involvement defense for defendants Schwebler and McGlynn. Dkt. No. 34.

On April 11, 2014, following submission of objections by defendants, United States District Court Judge Lawrence E. Kahn approved and adopted in part the Report-Recommendation. Dkt. No. 36. The decision and order (1) granted defendants' motion to dismiss as to (a) all claims against all defendants in their official capacities; (b) all claims

_____

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

against defendants Fischer and Knapp-David in their individual capacities; (c) the First Amendment retaliation and Fourteenth Amendment due process claims against defendants Schwebler and McGlynn in their individual capacities; and (2) denied defendants' motion to dismiss as to the Eighth Amendment claim against defendants Schwebler and McGlynn in their individual capacities. Dkt. No. 36. Burns was ordered to file an amended complaint bringing his remaining claims – First Amendment retaliation and Fourteenth Amendment due process claims against defendants Schwebler and McGlynn. Id. at 6.

Presently pending is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure (Fed. R. Civ. P.) 56(c). Dkt. No. 39-3. Burns opposed (Dkt. No. 43-1), and defendants submitted a reply to the present motion (Dkt. No. 44). For the following reasons, it is recommended that defendants' motion for summary judgment be granted and Burns' complaint dismissed with prejudice.


## I. Background

The facts are related herein in the light most favorable to Burns as the nonmoving party. See Subsection IIIA, infra. At all relevant times, Burns was an inmate at Coxsackie Correctional Facility. Burns alleges that on or about March 2, 2010, he was transferred from Great Meadow Correctional Facility to Coxsackie. Aff. in Supp. at 2. (Dkt. No. 1-1). Beginning in April 2010, Burns served as a stock clerk in commissary. Id. On May 19, while removing stock from shelves, Burns was struck in the face and neck by a falling can. Id. He suffered redness on his face and a scratch on his neck. Dkt. No. 39-15. Burns reported the injury to commissary staff and signed a medical waiver. Aff. in Supp. at 2. While working in commissary the next day, Burns was approached by defendants Sergeant

3

Noeth and Captain Shanley who informed him that his wife had called stating that he was cut by a fellow inmate.  Id. at 2-3.  Burns denied this and informed defendants Noeth and Shanley "that [he] was currently having problems with [his] wife and it was simply her way of causing trouble and reiterated that [he] had an accident in commissary while working and that [he] follower [sic] proper policy and procedure . . . ." Id. at 3.  Burns also told defendants Noeth and Shanley that a commissary officer witnessed the accident and documented it as a work-related injury.  Id.  Burns alleges that defendant Shanley told him that

> the only way [he] could remain in population would be if he agreed to be a 'snitch' for him and the Superintendent . . . . [Shanley] said if [he] refused to become his 'snitch' he and the Superintendent would let [him] rot in IPC [Involuntary Protective Custody] status until [he] died or was released form [sic] prison.

Id.  Burns "refused to become a 'snitch,'" so defendant Shanley told defendant Noeth to write an Involuntary Protective Custody ("IPC") recommendation.  Id.; Dkt. No. 39-14.

A Tier III disciplinary hearing commenced on May 26, 2010.  Dkt. No. 39-16, at 2.  At the hearing, Burns pleaded "not guilty" to the IPC recommendation.  Id. at 3.  Burns called as a witness Commissary Officer Jablanski.  Id. at 4.  Jablanski recalled that Burns told him that a can fell from the top shelf and hit him in the eye.  Id. at 5.  Jablanski logged the injury. Id.  Next, defendant Noeth testified that he received a call from defendant Shanley stating that Burns' wife had "called and said he was cut."  Id. at 7.  Noeth examined Burns and noted the presence of a black eye, but no other injury.  Id.  Burns told Noeth that the black eye was caused by a can falling on him in commissary.  Id.  Noeth testified that he later learned that Burns reported the injury to Jablanski the day after it occurred.  Id.  When asked if he knew whether there was "a threat to Mr. Burns' general safety within the general

4

inmate population" at Coxsackie, Noeth replied, "[i]f I go by the inmates['] word, no . . . ." Id. Noeth explained that Shanley directed him to submit paperwork for an IPC recommendation for Burns. Id. In response to Noeth's testimony, Burns stated that the reason for reporting the injury the next day was because his eye "didn't really swell up and get black until the next day" or that night. Id. at 8.

Thereafter, defendant Shanley testified that he recommended Burns for IPC status after receiving a phone call from Burns' wife wherein she stated that she feared for Burns safety because he had recently been in a fight. Dkt. No. 39-16, at 8. Shanley had Burns called to his office where he interviewed him. Id. Shanley noticed that Burns had a black eye and a superficial cut on the back of his neck. Id. Shanley testified that Burns reported that the injuries were caused by a falling can in commissary. Id. at 9. He learned that Burns had not immediately informed staff of the injury and determined that "his injuries were consistent with . . . having an altercation." Id. Shanley stated that there continued to be a threat to Burns' safety in the general inmate population because Burns had injuries consistent with an altercation, the perpetrator was unknown, and he "do[es]n't know if there's going to ramifications from this incident." Id. at 9. In response to Shanley's testimony, Burns opined that, had he been involved in an altercation with another inmate, someone in his dorm would have seen it. Id.

Following close of testimony on June 7, 2010, hearing officer Gutwin concluded that substantial evidence demonstrated that a threat to Burns' safety existed and, thus, he was in need of IPC. Dkt. No. 39-16, at 10. The hearing officer informed Burns that, in order to challenge the IPC determination, he "must file a Tier 3 appeal form" to the Commissioner within thirty days of the end of the hearing. Id. at 11.

On June 10, 2010, Burns filed grievance number CX-15921-10. Dkt No. 39-6. The grievance alleged that Burns' personal safety was in jeopardy because there was a lack of security in his IPC unit in violation of DOCCS Directive 4948. Id. at 3. Burns noted that he was placed in IPC due to alleged safety concerns relating to an unknown assailant, but that his safety was at risk because his unit improperly housed general population, keeplock,[2] and SHU[3] inmates, who shower with him and who "[we]re routinely walking past [his] cell." Id. Burns expressed concern that one of these inmates could attack him if he left his cell for a shower or a visit. Id. Burns specified that "this grievance is not in regards to my IPC hearing and/or disposition." Id. During the investigation of grievance CX-15921-10, nonparty Sergeant Baczkowski interviewed Burns. Dkt. No. 39-6, at 5. Baczkowski informed Burns that "he could file an appeal of his status, and that the grievance system shouldn't be utilized for that purpose" and that Burns "now knows that he can use the appeal process to rectify his situation, and will file an appeal instead of a grievance in the future." Id. During the investigation, Burns stated that he did not feel the need for IPC, was not involved in an altercation, and had complained about his personal safety in the grievance because "he was being spiteful for being placed in IPC." Id.

The Inmate Grievance Review Committee ("IGRC") denied Burns' grievance "[b]ecause

---

[2] "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

[3] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

of the reason stated in the investigation." Dkt. No. 39-6, at 4. Burns appealed to the Superintendent. Id. at 1. Burns' grievance was denied. Id. The Superintendent responded that "[s]taff denies the allegation that the grievant's personal safety is in jeopardy." Id. The Superintendent noted that Burns told staff that his reason for filing the grievance was because "he wished to be removed from IPC status." Id. The determination further noted that Burns was informed of the proper procedure to appeal his IPC status, and he "has been going out to recreation, showers and the activities he is entitled to." Id. at 1, 4-5.

On July 15, 2010, Burns filed grievance number CX-15983-10 relating to his placement in IPC. Dkt. No. 39-7. Burns contended that he had requested a transfer but was told by his counselor that movement and control denied his transfer, determining "present placement appropriate." Id. at 5. He contended that when he asked defendant Martuscello why he was in IPC, Martuscello said that it was because his family had called. Id. Burns alleged in the grievance that he was placed in IPC as retaliation because he had not been involved in an altercation, had a good disciplinary record, and did not have any enemies. Id. Burns reiterated that he was injured on the job in commissary and that the officer in commissary documented the injury and had him sign a medical waiver. Id.

The grievance was denied by IGRC because Burns "had a hearing wherein it was determined that IPC was appropriate." Dkt. No. 39-7, at 16. Burns appealed to the Superintendent, and the Superintendent denied the grievance. Id. at 7, 16. Burns appealed from the Superintendent's denial, and CORC denied his appeal. Id. at 1. In its denial, CORC "advise[d] the grievant that in accordance with Directive #4040, Inmate Grievance Program, an individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside

7

of the facility shall be considered non-grievable."  Id.  CORC also "advise[d] the [grievant] to

address his transfer concerns to his correction counselor."  Id.  Lastly, CORC noted that

> in addition to the actual hearing . . . he was also provided with an
> opportunity to appeal his IPC determination in accordance with 7 NYCRR,
> Chapter V.  This appeal mechanism afforded the grievant with an
> opportunity to remedy any factual or procedural errors.  CORC has not
> been presented with sufficient evidence to substantiate any malfeasance
> by staff.

Id.

Next, Burns filed grievance CX-16033-10 because Coxsackie did not participate in the

Family Reunion Program.  Dkt. No. 39-9.  This grievance was denied by the IGRC,

superintendent, and by CORC because Coxsackie does not participate in the Family

Reunion Program and "there is no requirement to house an inmate in a facility that offers

the Family Reunion Program (FRP) or that each facility establish an FRP."  Id. at 1, 6, 8-9.

Finally, on or about January 18, 2011, Burns filed grievance number CX-16281-11

wherein he requested access to weights in the IPC yard.  Dkt. No. 39-8, at 2.  In this

grievance he also stated that he was in IPC "due to some far fetched theory by the

administration [that he] was in an altercation, despite the logged injury report stating a can

fell on [him] while pulling buys at [his] program in commissary."  Id.  Burns argued that he

was "not in IPC for disciplinary infraction but for following proceedure [sic] and reporting

[his] injury and [he was] subjected way beyond the departure of ordinary prison life[.]"  Id.

The grievance was accepted in part and denied in part by IGRC in that a weight bar would

be placed in the yard once snow was cleared.  Id. at 3-4.  Burns alleges that he appealed

the partial denial, contending that he should not have to wait until the yard conditions

improved in order to have access to weights.  Dkt. No. 43, at 12.

In January 2011, Burns was released from IPC upon his transfer to Attica Correctional Facility. Dkt. No. 39-13, at 7.

## III. Discussion[4]

Burns contends that defendants Schwebler, McGlynn, Martuscello, Shanley, and Noeth violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. Specifically, he argues that (1) defendants Shanley, Martuscello, and Noeth retaliated against him in violation of the First Amendment by placing him in IPC after he declined to act as their "snitch"; (2) defendants Shanley, Martuscello, and Noeth violated the Fourteenth Amendment by placing him in IPC without proper due process; and (3) defendants Shanley, Martuscello, Noeth, Schwebler, and McGlynn[5] violated the Eighth Amendment and DOCCS Directive 4948 by subjecting him to conditions of confinement amounting to cruel and unusual punishment.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any

---

[4] All unpublished decisions cited herein are attached to this Report-Recommendation.

[5] In a decision and order dated April 11, 2014, United States District Court Judge Lawrence E. Kahn ordered "that if Plaintiff wishes to bring his First Amendment retaliation and Fourteenth Amendment due process claims against Defendants Schwebler and McGlynn, he may do so by filing, within thirty (30) days of this Decision and Order, an amended complaint that remedies the deficiencies identified in this Decision and Order . . . ." Dkt. No. 36. As Burns failed to file an amended complaint, this Report-Recommendation will consider the First and Fourteenth Amendment claims only as brought only against defendants Martuscello, Shanley, and Noeth.

material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant

10

rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## B. **Exhaustion**

Defendants contend that Burns has not exhausted his administrative remedies because he failed to appeal (1) his IPC hearing; (2) to CORC the denial of grievance CX-15921-10; and (3) to CORC the partial denial of grievance number CX-16281-11 concerning weights in the IPC recreation yard. Dkt. No. 39-3, at 5.

Under 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act, an inmate must exhaust all administrative remedies before bringing an action for claims relating to his incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted). The exhaustion requirement applies even if the administrative grievance process does not provide for all of the relief requested by the inmate. Nussle, 534 U.S. at 524.

Although the Supreme Court of the United States has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)). Thus, even where an inmate has failed to exhaust, a court must conduct a three-part inquiry to determine whether an inmate's failure to follow the applicable grievance procedures is excusable. In making this inquiry, a court must consider whether:

(1) administrative remedies are not available to the prisoner;

11

> (2) defendants have either waived the defense of failure to exhaust or
> acted in such a way as to estop them from raising the defense; or (3)
> special circumstances, such as a reasonable misunderstanding of the
> grievance procedures, justify the prisoner's failure to comply with the
> exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Administrative remedies are unavailable when there is no "possibility of [] relief for the action complained of." Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v. Churner, 532 U.S. 731, 738 (2001)). The test to determine the availability of an administrative remedy is an objective one, whether "a similarly situated individual of ordinary firmness" would have deemed it accessible. Id. at 688. Unavailability may be found in circumstances "where plaintiff is unaware of the grievance procedures or did not understand it . . . or where defendants' behavior prevents plaintiff from seeking administrative remedies." Hargrove v. Riley, No. CV-04-4587 (DST), 2007 WL 389003, at *8 (E.D.N.Y. 2007) (internal citations omitted). Further, "where a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available' to the defendant, and thus the [PLRA] does not preclude the prisoner from suing in federal court." Thomas v. New York State Dep't of Corr. Servs., 00-CV-7163(NRB), 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002) (citations omitted).

At all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES. R. & REGS. tit. 7, § 701.5 (2014). First, the inmate is required to file a complaint with an inmate grievance program clerk ("IGP") within twenty-one days of the alleged action. Id. at § 701.5 (a) (1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5 (b)(1). If no informal resolution occurs, the full

IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after conclusion of the hearing. Id. §§ 701.5 (b)(2)(i), (ii). If unfavorable, a grievant may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. §701.5 (c) (1). If the superintendent's determination is unfavorable, the grievant may take the third and final step of the grievance procedure by appealing to the central office review committee ("CORC") within seven days after receipt of the unfavorable Superintendent's determination. Id. §§ 701.5 (d)(i),(ii). CORC must issue a written decision within thirty days of receipt of the grievant's appeal. Id. § 701.5 (d)(2)(ii).

DOCCS has a separate administrative appeal process for disciplinary hearings – which includes IPC hearings – under 7 NYCRR § 254.8. For tier III hearings, an inmate must appeal to the DOCCS Commissioner or his designee within thirty days of receipt of the disposition. 7 NYCRR § 254.8. During the period of time that an inmate is subject to the penalty imposed by the hearing, the superintendent may review the determination and reduce the penalty at any time. 7 NYCRR § 254.9. An inmate's appeal of a disciplinary hearing determination "constitutes exhaustion under the PLRA for purposes of rendering his due process claim ripe for adjudication in federal court." Davis v. Barrett, 576 F.3d 129, 132 (2d Cir. 2009). The regulations further provide that the results of disciplinary proceeding, or any "program or procedure having a written appeal mechanism which extends to review outside the facility," are nongrievable. 7 NYCRR § 701.3 (e) (1), (2).

In response to defendants' opposition to summary judgment, Burns contends that he properly exhausted his administrative remedies as it relates to the IPC hearing because he "submitted a timely administrative appeal to the IPC Placement as authorized by 7 NYCRR

13

254.8, by placing said appeal into the hands of corrections officials for depositing into the mailbox as per facility policy . . . ." Dkt. No. 43, at 2. Burns provides a copy of this alleged appeal. Id. at 8. He similarly contends that he exhausted remedies for grievance number CX-15921-10 by "authoring an 'Appeal Statement' and forwarding said appeal to the Grievance Office through the facility's mail procedure." Dkt No. 43, at 3. Burns provides a copy of this alleged appeal. Id. at 10. He also contends that he exhausted administrative remedies for grievance number CX-16281-11 because he "submitted a timely appeal by returning the grievance form with a statement to the grievance office through the facility's mail procedure." Dkt. No. 43, at 5. Burns provides a copy of this alleged appeal. Id. at 12. By contrast, defendants contend that they have no record of an appeal of the IPC hearing. Dkt. No. 44. Defendants have submitted affidavits from Albert Prack stating as such. Dkt. No. 39-11, at 2. These "squarely conflicting accounts give rise to a dispute of fact hat cannot appropriately be decided on summary judgment since the matter would require the court to make a credibility determination without the aid of live testimony." Peak v. Schwebler, 11-CV-0041 (MAD/DEP), 2013 WL 317016, at *5 (N.D.N.Y. Jan. 3, 2013).

Accordingly, it is recommended that defendants' motion for summary judgment, insofar as it raises the affirmative defense of nonexhaustion, should be denied.


## C. **First Amendment**

Burns alleges that defendants Shanley, Martuscello, and Noeth retaliated against him by placing him in IPC for refusing to act as their snitch, in violation of the First Amendment.

It is well established that prison officials may not retaliate against inmates for exercising

their constitutional rights. See, e.g., Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995). To establish a claim of retaliation by prison officials in violation of the First Amendment, an inmate must allege "(1) that the speech or conduct at issue was constitutionally protected, (2) that the defendant took adverse action against plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). An action is considered to be adverse if it "would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). An inmate's retaliation claims must be assessed "with particular care" because "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed act." Id. at 352 (quoting Dawes, 239 F.3d at 491).

Here, Burns alleges no constitutionally-protected activity. He contends that defendants Martuscello and Shanley retaliated against him by placing him in IPC following his refusal to act as an informant. However, nowhere in Burns submissions does Burn allege that he was engaged in protected conduct. See generally Campbell v. Gardiner, No. 12-CV-6003P, 2014 WL 906160, at *5 (W.D.N.Y. Mar. 7, 2014). Although some courts have concluded that a prison official's act of intentionally calling an inmate a snitch in front of other inmates may give rise to an Eighth Amendment claim (Watson v. McGinnis, 964 F.Supp. 127, 131-32 (S.D.N.Y. 1997) (citing cases)), it does not appear that a court has held, for the purposes of a First Amendment analysis, that an inmate's refusal to act as an informant is protected nor is the inmate's verbal expression of refusal. See Allah v. Junchenwioz, No.

15

93-CV-8813(LMM), 2005 WL 2173826, at *1 (S.D.N.Y. Sept. 6, 2005).  Thus, Burns does

not specifically allege that he was retaliated against for an exercise of constitutionally-

protected conduct in violation of the First Amendment.

Accordingly, it is recommended that defendants Shanley, Martuscello, and Noeth's

motion for summary judgment be granted as to Burns' First Amendment retaliation claim.

### D. **Eighth Amendment**

### i. **Conditions of Confinement**

Burns contends that defendants Shanley, Martuscello, Noeth, Schwebler, and McGlynn

violated the Eighth Amendment because the conditions he was subject to in IPC amounted

to cruel and unusual punishment.  Specifically, Burns argues that, according to DOCCS

regulations, he was not supposed to have any contact with general population inmates, but

was housed in the same gallery, forced to shower with, and given visits at the same time as

general population, keeplock, and SHU inmates.  Dkt. No. 1-1, at 5.  Further, these inmates

kept him awake at night with disorderly, loud behavior and gang chants.  Id. at 6.  He also

contends the inmates in his unit subjected him to "violent threatening, abusive behavior

every minute and every hour of every day."  Id. at 5.  Burns also argues that he was denied

access to the rehabilitative programming and services that are to be afforded to inmates,

including participation in the Family Reunion Program, daily rounds by counselors and

grievance supervisors; weekly rounds by librarians as well as regular circulation of

periodicals[6]; weekly rounds by religious leaders; access to counseling, school, and drug

---

[6]    To the extent that Burns' claims regarding the law librarian's failure to make
weekly rounds or circulate periodicals can be read to suggest that defendants denied him

programs; extended recreation, gym programs, and the use of weights; access to board games and recreational equipment; and yard activities. Id. at 5; Dkt. No. 1-2, at 2-3.

"The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994). As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). Thus, "a prisoner may prevail only where he proves both an objective element – that the prison officials' transgression was sufficiently serious – and a subjective element – that the officials acted, or omitted to act, with a sufficiently culpable state of mind . . . ." Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (internal quotation marks and citations omitted). The objective prong can be satisfied by conditions of confinement which, in combination may constitute an Eighth Amendment violation "when each would not do so alone," such as "when the conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." Davidson v. Murray, 371

_____

meaningful access to the courts, Burns fails to indicate that (1) defendants acted deliberately or maliciously or (2) there was any legal action or proceeding that he was hindered from completing and, thus, does not allege actual injury. See Thomas v. Egan, 1 Fed.Appx. 52, 54 (2d Cir. 2001) (reciting that a claim of denial of access to the courts must allege actual injury). Further, Burns does not state a specific instance where he requested access to law library materials and was denied such access, instead citing to a general failure to have a librarian make rounds, in violation of a DOCCS directive. See Dkt. No. 39-13, at 12. Thus, Burns fails to proffer facts sufficient to support a potential access to the courts claim. See Lewis v. Casey, 518 U.S. 343, 351 (1996); see also Vega v. Artus, 610 F.Supp.2d 185, 201 (N.D.N.Y. 2009).

F.Supp.2d 361, 370 (W.D.N.Y. 2005) (citations omitted).  However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  Id. (citing Wilson v. Seiter, 501 U.S. 294, 304-05 (1991)).

Moreover, a "'limitation' of privileges is not the same as denial of those privileges." Thorpe v. Village of Greenwich, 13-CV-902 (GTS/ATB), 2014 WL 788816, at *12 (Feb. 25, 2014).  It is well-settled that administrative segregation conditions, even though "restrictive and . . . harsh, [are insufficient to establish Eighth Amendment violations because] they are part of the penalty that criminal offenders pay for their offenses against society."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Limitation on time out of cell, time to program, and on exercise and weight lifting, as well as denial of access to niceties such as television and board games, do not amount to constitutional violations, even when considered collectively. Tavares v. Amato, 12-CV-563, 2013 WL 3102031, at *12-13 (N.D.N.Y. Jun. 18, 2013) (holding that confinement in cell 23-hours per day, inability to program, denial of access to exercise, and denial of showers on weekends did not amount to Eighth Amendment violation).

Insofar as Burns suggests that he was subject to threats and gang chants from other inmates, threats and abusive language do not amount to Eighth Amendment violations. See, e.g., Carpio v. Walker, No. 95-CV-1502 (RSP/GJD), 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997).  Although Burns suggests that his safety was at risk because he was housed with general population, SHU, and keeplock inmates, he fails to demonstrate how any risk of harm he faced at the hands of any of the inmates in his unit differed from the general risk any inmate potentially faces.  Thus, Burns' allegations fail to satisfy the

18

objective prong of the Eighth Amendment analysis.[7]

Similarly, read liberally, Burns submissions suggest a claim that denial of access to weights in the IPC yard in all weather conditions was a condition of confinement that violated the Eighth Amendment. However, Burns does not allege that he was denied access to all forms of exercise. Moreover, temporary limitations on access to exercise, without full denial of opportunities, does not violate the Eighth Amendment. See Davidson v. Coughlin, 968 F.Supp.121, 129 (S.D.N.Y. 1997) (citing cases). Further, the limitation was not based on a culpable state of mind or deliberate indifference to Burns' health or safety, but the legitimate penological interest of waiting until the yard was cleared of ice and snow so that it would be safe for inmates to use. Dkt No. 39-8, at 4.

Insofar as Burns' complaint may be read to argue that his inability to participate in a Family Reunion Program violated the Eighth Amendment, denying an inmate the ability to participate in such a program does not violate the Eighth Amendment. See, e.g., Moore v. New York State Dept. of Corr. Servs., 26 Fed. Appx. 32, 33 (2d Cir. 2001) (citing Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001)); Champion v. Artuz, 76 F.3d 483, 486 (2d. Cir. 1996). Moreover, Coxsackie did not participate in the Family Reunion Program. Dkt. No. 39-9, at 8.

To the extent that Burns argues that any of the conditions of his confinement violated DOCCS directives, it is well settled that "[a] violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." Cusamano v. Sobek, 604

---

[7] As plaintiff has not satisfied the objective element of the test, the court need not address whether Burns has satisfied the second prong, the subjective element of this two-part test. See Jolly, 76 F.3d at 480.

19

F.Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases).

b. **Failure to Protect**

Providing a liberal reading, Burns' complaint also suggests that defendants Shanley, Martuscello, Noeth, Schwebler, and McGlynn failed to protect him by placing him in IPC confinement. Burns appears to argue that the general population, SHU, and keeplock inmates housed in his unit were violent and could attack him at any time. Dkt. No. 1-2, at 2. Burns further appears to suggest that, since the assailant defendants believed to be involved in cutting him was unknown, any of the prisoners housed near him could be the assailant. Id.

To state a claim for failure to protect under the Eighth Amendment, a plaintiff must satisfy objective and subjective tests. In order to state an Eighth Amendment claim for failure to protect, the plaintiff must show, objectively, that he was incarcerated under conditions posing a substantial risk of serious harm, and, subjectively, that prison officials acted with deliberate indifference to that risk and the inmate's safety. Farmer, 511 U.S. at 836. The plaintiff must show that prison officials actually knew of and disregarded an excessive risk of harm to the inmate's health and safety. Id. at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference. Id.

Here, Burns fails to demonstrate that he faced a substantial risk of serious harm. Burns does not allege that he was attacked by any of the inmates housed in his cell block nor does he suggest that he was in fear of such attack. Instead, his submissions opine that he faced the possibility of attack when he left his cell, but does not distinguish how this general risk of a potential attack differs from the risk any incarcerated individual may face at any

level of confinement.  Further, Burns submissions suggest that he alleged that his safety was at risk because he was angry about his continued placement in confinement.  Dkt. No. 39-6, at 5.

Burns also fails to contend that defendants knew of and disregarded an excessive risk to his safety.  Eighth Amendment failure to protect claims are not to be based on a defendant's knowledge of a "general risk" of harm to an inmate.  See, e.g., Hogan v. Fischer, No. 09-CV-6225, 2012 WL 4845609, at *6 (W.D.N.Y. Oct.10, 2012) (internal citation omitted) (holding the failure to protect the plaintiff against a general threat of harm is insufficient to raise a failure to protect claim under the Eighth Amendment) vacated in part on other grounds 738 F.3d 509 (2d. Cir. 2013).  Thus, Burns does not sufficiently state a claim for failure to protect against defendants.

Accordingly, it is recommended that defendants' motion for summary judgment be granted on this ground.


### D.  **Fourteenth Amendment**

Burns argues that defendants Shanley, Martuscello, and Noeth violated the Fourteenth Amendment by placing him in IPC without due process.  In determining whether the IPC placement violated Burns' due process rights, the court must consider  "'(1) whether the plaintiff had a protected liberty interest in not being confined . . . and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law.'"  Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000) (quoting Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997)).

### i. **Liberty Interest**

An inmate has a protected liberty interest in being free from segregated confinement if he can make a threshold showing that the deprivation of which he complains imposed the requisite atypical and significant hardship.  See Sandin v. Connor, 515 U.S. 472, 483-84 (1995); Tellier, 280 F.3d at 80 (quoting Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996)).  Among the factors to be considered in determining whether confinement is atypical include, "(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement." Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir.1998) (citing Sandin, 515 U.S. at 484).  While not dispositive, the duration of a disciplinary confinement is a significant factor in determining atypicality.  Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted).  No firmly established, bright-line rule exists to determine the length or type of sanction that rises to the level of atypical and significant hardship. Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (citations omitted).

Addressing the conditions of confinement, Burns was in IPC for a period of eight months.  This district has previously held that a period of IPC confinement lasting 132 days was sufficient to satisfy the Sandin test.  See Tavares, 2013 WL 3102031, at *12-13. However, Sandin requires the court to consider not just the length of confinement, but also the conditions of the confinement in comparison to the conditions faced by inmates in other types of confinement.  515 U.S. at 483-84.  Burns contends that he did not have access to certain rehabilitative programs, was limited to three hours of programming and out-of-cell time, versus thirteen hours in general population; was denied certain recreational benefits

such as weights, television, and board games to which general population inmates had access.  Dkt. No. 1-1, at 5-6.  He also contends that the grievance supervisors, counselors, religious leaders, and the facility librarian failed to make regular rounds.  Id.  Burns argues further that general population inmates had the benefit of "orderly calm housing units with enforced quiet sleeping time and orderly atmospheres, both safe and secure," whereas in his unit, it was always noisy and his fellow inmates kept him awake with "high volume, involving gang chants and threats until 5 o'clock in the morning."  Id. at 6.[8]

Although the conditions of IPC confinement Burns faced may have been less than ideal, Burns has not demonstrated that he was subject to conditions that were so atypical when compared to ordinary prison life as to give rise to a protected liberty interest.   Burns concedes that he was able to leave his cell for showers, three hours of programming, and some visitation.  Dkt. No. 1-1, at 5; Dkt. No. 39-9, at 5, 22-23 .  Further, Burns was eventually given access to weights in his recreation yard as long as the weather permitted such access.  Dkt. No. 1-1, at 5; cf. Cody v. Jones, 895 F.Supp. 431 (N.D.N.Y. 1995) (holding that, although the plaintiff did not always receive his hour of exercise, two out-of-cell meals per day, and three hours out-of-cell per day, "when the whole picture is examined, the court cannot find that his conditions of confinement during that time 'present a dramatic departure from the basic conditions' of his sentence.") (citing Sandin, 515 U.S. at 485); see also Arce v. Walker, 139 F.3d 329, 335 (2d Cir. 1998) (holding that, although

_____

[8]  Insofar as Burns' complaint can be read to suggest that defendants' IPC recommendation itself violated due process, "the mere preparation of an administrative segregation recommendation is not a basis for a § 1983 claim; rather, a prisoner's due process rights remain intact so long as he has an opportunity to rebut the charges against him at a hearing." Gillard v. Rovelli, 12-CV-83 (LEK/CFH), 2014 WL 4060025, at *11 (N.D.N.Y. Aug. 14, 2014) (citation omitted).

the conditions were more restrictive than for inmates in general population, the conditions of an inmate's eighteen-day administrative segregation did not invoke a liberty interest where the inmate argued that the atypical conditions he faced included denial of exercise and access to communal meals and communal religious services).[9]

Thus, Burns has failed to demonstrate that he had a protected liberty interest in being free from IPC confinement.

### ii. **Insufficient Process**

Even assuming Burns had a protected liberty interest at stake, it does not appear that Burns was denied due process protections.  Once a plaintiff demonstrates that he has a liberty interest at stake, a court is to determine whether the inmate was afforded the minimum due process requirements.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also Arce, 149 F.3d at 335 (holding that an inmate is entitled to minimal due process protections when being involuntary placed in administrative confinement).  As a form of administrative segregation, IPC placement "requires only an informal, nonadversary review."  Smart v. Goord, 441 F.Supp.2d 631, 641 (S.D.N.Y. 2006).  "The procedural due process protections are minimal, dictating that the informal review must occur within a reasonable time, after the inmate has had some notice of the charges lodged against him and an opportunity to present his views to the administrator making the determination about segregation."  Tavares, 954 F.Supp.2d at 95.  Further, an inmate's IPC status must be

---

[9]  Insofar as Burns contends that general population inmates were afforded the opportunity to participate in a family reunion program at Coxsackie (Dkt. No. 1-1, at 6), the record makes clear that Coxsackie did not offer this program to any of its inmates.  Dkt. No. 39-9, at 1.  Further, it is well-settled that inmates do not have a protected liberty interest in participating in a family reunion program.  Champion, 76 F.3d at 486.

"reviewed every 30 days by a three-member committee consisting of a representative of the facility executive staff, a security supervisor, and a member of the guidance and counseling staff. The results of such review shall be forwarded, in writing, to the superintendent for final determination." N.Y. Code Rules & Regs. tit.7, § 330.3(b)(2); cf. Giano v. Kelly, 869 F.Supp.143, 150 (W.D.N.Y. 1994) (holding that a plaintiff is not required to be provided with the dates of these reviews or specific reasons in the case of a denial).

Burns' complaint does not specifically allege any procedural deprivations. The transcript of the hearing reveals that Burns was served in advance with a copy of the IPC recommendation; was offered, but waived, an employee assistant; was presented with the opportunity to call witnesses on his behalf, and did call and question such witnesses. Id. at 3-10. At the conclusion of the hearing, a written disposition was read into the record and Burns signed a copy of this disposition. Id. at 10-11. Moreover, Burns does not deny that defendants conducted reviews of his IPC placement every thirty days. Dkt. No. 1-1, at ¶ 66. The only indication of a procedural due process violation claim that can be gleaned from Burns' submissions is his statement in the deposition that the hearing officer at the IPC hearing was biased and cut him off. However, Burns provides no specific examples of bias and the transcript of the hearing reveals no evidence of such. Dkt. No. 39-16.

Accordingly, as it is clear that Burns was afforded all the procedural process he was due, it is recommended that defendants' motion for summary judgment be granted on this ground.

## IV. **Conclusion**

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for

summary judgment (Dkt. No. 39-3) be:

1. **DENIED** as to defendants' affirmative defense of failure to exhaust administrative

remedies; and

2. **GRANTED** with prejudice as to plaintiff's First, Eighth, and Fourteenth Amendment

claims against all defendants and;

Pursuant to 28 U.S.C. § 636 (b) (1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen

(14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c)

(citing 28 U.S.C. § 636 (b) (1) (B)-(C)).

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993);

Small v. Sec'y of Heath and Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72, 6 (a), 6 (e).


Dated: December 17, 2014
    Albany, New York

Christian F. Hummel
U.S. Magistrate Judge